THE TRUSTEES FOR THE SUPPORT OF THE PUBLIC SCHOOLS

*v.*

THE NEW JERSEY WEST LINE RAILROAD COMPANY and others.

A sheriff was directed by complainants' solicitor to stop the advertisement of a sale under foreclosure, because an injunction restraining such sale had issued out of a federal court. The sheriff nevertheless

continued to adjourn the sale from week to week for nearly three years, no notice of such adjournments being given, or required to be given by statute, in any newspaper. After the injunction was dissolved, and without any further or other notice to subsequent encumbrancers or other parties in interest, he sold the premises, realizing an amount far below their value.—*Held,* that the sheriff's action in the adjournments could not, under the circumstances, be regarded as a substantial compliance with the statute, and that there was such surprise on the parties interested, by reason of want of notice, and such consequent injury to their rights, as justified the court in setting aside the sale on terms.

Bill to foreclose. On motion to set aside sheriff's sale. On petitions and affidavits.

*Mr. F. T. Frelinghuysen* and *Mr. B. Williamson,* for petitioners.

*Mr. B. Gummere,* for complainants.

*Mr. T. N. McCarter,* for the purchaser.

THE CHANCELLOR.

Francis S. Lathrop, receiver of the Central Railroad Company of New Jersey, and William Z. Larned, receiver of the New Jersey West Line Railroad Company, by their petitions, pray that the sale made by the sheriff of Hudson county, under the execution for the sale of the mortgaged premises in this suit, may be set aside, on the ground of surprise.

The property is a tract of land, and land under water, of more than one hundred acres, known as the "West Line Tract," in Communipaw Cove, in Hudson county, and is said to be of very great value, very far beyond the amount ($123,000) at which it was sold by the sheriff.

The receiver of the West Line Company was interested in the property, because the title to it was in his company, which was the mortgagor. Mr. Larned was also interested as the holder, as executor, of encumbrances on it subsequent

to that of the complainants, amounting to more than $25,000, and, as executor, he was the holder of bonds of the West Line Company to the amount of $460,000. The receiver of the Central Railroad Company was interested as the holder of bonds to the amount of $900,000. The execution was issued on or about the 19th of November, 1875. Under it the sheriff advertised the property, the sale to take place in January, 1876, and from that day he, as he says, adjourned the sale from week to week up to the time when the property was sold, December 26th, 1878, a period of nearly three years.

About the 5th of May, 1876, the solicitor of the complainants, then attorney-general of this state, was informed that a suit had been instituted in the United States circuit court for the district of New Jersey, by John Taylor Johnston, in which an injunction staying the proceedings in this suit was issued. It appears that soon after he obtained that information, and while the injunction was in force, and in view of it, he directed the sheriff to discontinue the adjournment. The injunction was not dissolved until the 30th day of November, 1878. He supposed that his instructions had been obeyed, and that the adjournment had been discontinued, and that new advertisement would be necessary. So, also, did his successor, the present attorney-general, who represented the complainants in the suit in the federal court, on the application to dissolve the injunction. When the order dissolving the injunction was made, he said, in the presence of the counsel of Mr. Johnston, who were, also, of counsel with the receiver of the Central Railroad Company, that the adjournment had been discontinued.

After the injunction was dissolved the complainants' solicitor directed the sheriff to re-advertise the property, but was informed by the latter that it would be unnecessary, because he had continued the adjournments. He thereupon directed that the sale take place, and it took place accordingly.

To consider the merits of this application: It is said that the petitioners have no substantial interest in the sale. But, as before stated, the receiver of the West Line Company is interested, because his company is the owner of the equity of redemption, and Mr. Larned is interested, as executor, under the execution, and as a bondholder. It is urged that it does not appear probable that anything will be realized by him as receiver on a resale, because there is no evidence that the property will bring even the amount of the encumbrances. But the property is of very great value, and I cannot assume that, at a sale properly advertised, it will not produce more than the amount of the encumbrances. It is said, also, that it does not appear probable that anything will be realized for him as an encumbrancer on a second sale, because there are encumbrances of large amounts which are entitled to priority over his. But the priority of those encumbrances has not yet been established. The surplus, after paying the amount due the complainant, is ordered to be paid into court.

It is urged, also, that the receiver of the Central Railroad Company has no interest. What has been said in regard to the interest of the West Line receiver is applicable to him as the holder of bonds. He also claims to have an interest in the property by title superior to that on which the complainants' mortgage rests, but that title, if it exists, will not be affected by the sale, and, in that respect, the receiver is a stranger, and, therefore, cannot intervene to set aside the sale. It will be sufficient, however, for the purposes of this motion, to consider the question, in view of the standing which the West Line receiver undoubtedly has. On the 25th day of July, 1878, he was about to sell the interest of his company in the property (and his title is that under which the complainants' mortgage was given), when his proceedings to that end were stopped by this court, of its own motion, by an order of that date. That action on the part of the court was induced by the consideration that the property was claimed by two insolvent corpora-

Trustees for Support of Public Schools *v.* N. J. West Line R. R. Co.

tions, the West Line and the Central, whose affairs the court was administering under the statute. There was good reason why the property should not be sold by the West Line receiver, subject to the deadening influence of an adverse claim upon the sale, and there was equally good reason why the court should not permit him to sell, as the property of the West Line Company, property claimed by the receiver of another trust estate in its hands. These prudential considerations induced the court to restrain him.

The object of the litigation in the federal court was to assert and protect the paramount title which the Central Railroad Company claimed to have to the property.

The West Line receiver subsequently asked leave of this court to take steps to intervene in that suit to protect the interest of his company. The leave was not accorded, because of want of funds, and the fact that it was supposed that the right of the West Line Company would be represented and defended by the complainants in this suit, in the protection of their mortgage. He subsequently, in November, 1878, again sought such leave, representing that the Lehigh Valley Railroad Company, which was largely interested as holder of bonds of the West Line Company, had agreed to indemnify him against the costs and expenses of his defence. The leave was then accorded to him. The injunction in the suit in the federal court was dissolved without his knowledge. It was dissolved on the ground that, not having been renewed, it continued only until the next term of the court after May 5th, 1876, when it was granted. The property was then put up for sale under the execution, and it was struck off to Mr. Hartshorn, vice-president of the Lehigh Valley Railroad Company, and treasurer of the Easton and Amboy Railroad Company, for (as he says) the latter company, at the price of $123,000, the amount due the complainants on their mortgage.

If the sale stands, the interest of Mr. Larned in the property as receiver and executor is gone. The whole amount of the liens on the property will not exceed $300,000. It is

Trustees for Support of Public Schools *v.* N. J. West Line R. R. Co.

alleged, and it is not denied, that a sum of money equal to more than twice the amount for which it was struck off has been expended in the reclamation of the property, and it would undoubtedly bring a very large sum beyond the price at which it was sold, if there were no question in regard to the title. The receiver of the West Line Company claims that his title is good, and that the claim made in the suit in the federal court against it is invalid. If the sale under the execution will indeed convey a good title, it is most manifest that the sale ought not, under the circumstances, to be permitted to stand. Obviously, I cannot assume that the adverse claim is good. But, irrespective of that claim, Mr. Larned, as receiver and executor, is entitled to the benefit of the provision of the statute for notice of the sale. It is quite clear that practically and substantially the sale took place without notice. There was indeed a compliance with the letter of the law, the sale was advertised, and it was adjourned from week to week (it is said) up to the day on which it took place. There was no advertisement of any of those adjournments in any newspaper (the law did not require that there should be any), and it is undeniable that no person in interest, not even the complainants' solicitor, had any knowledge whatever of the fact that the adjournments were being made. To say nothing of notice to the public to attract bidders, no notice was given to Mr. Larned that the sale was to take place. The sheriff says that he relied upon the complainants' solicitor to give notice to the parties in interest, because the solicitor had given him to understand that he would notify them; and he adds, that but for his reliance on the solicitor, and his belief that the latter had notified all the parties in interest, he would have notified the Central Railroad Company, the receiver of the West Line Railroad Company, and other parties who he knew were interested in the property, that the sale was to take place on the 26th of December, 1878. It is true the solicitor denies that there was any ground for such understanding on the part of the sheriff, and positively

Trustees for Support of Public Schools *v.* N. J. West Line R. R. Co.

denies, also, that he undertook to notify the parties interested in the property. But it is evident, at all events, that the sheriff supposed, however erroneously, that the West Line receiver and all others in interest were to be notified by the complainants' solicitor, and therefore did not himself notify them, as he would otherwise have done. The want of due notice constrains me to consider the sale an unfair one. The adjournments by the sheriff, after May, 1876, having been not only unauthorized but made against the directions of the complainants' solicitor, cannot, under the circumstances, be regarded as a substantial compliance with the requirements of the law. Adjournments so made for so long a period (about two years and a half), in the presence of none of the parties, not even with the knowledge of any of them, and of which no notice whatever is given to any one, cannot be held to be more than a mere compliance with the letter of the law. It is manifest that the object of the statute in requiring notice was not answered. Practically, it was precisely as if no notice had been given.

While it is the duty of the court to uphold judicial sales fairly conducted, and to give to purchasers thereat the benefit of their purchases, it is no less its duty to see to it that the defendant in execution has the benefit of that important provision for notice which the law has made for his protection. *Cummins* v. *Little,* 1 *C. E. Gr.* 48.

It may be added that, in view of the action of the court before mentioned, in restraining the West Line receiver, the sale may justly be regarded as a surprise upon the court itself.

The sale will be set aside on such terms as to protect the complainants against loss on a resale of the property, and to indemnify the purchaser for loss of interest on the percentage paid by him, and his costs of this application.

It will, therefore, be ordered that, if the petitioners, or one of them, furnish bond (not to be signed by either of them, however, as receiver) that the property on a resale shall bring the amount then due the complainants on the execution,

with costs of both sales, and pay to the purchaser interest on the percentage (which of course is to be repaid to him) paid to the sheriff on the sale, with his costs of this application, the sale will be set aside. It was urged, on the argument, that if the sale be set aside the complainants will thus lose the benefit of recourse to Asa Packer, who, they claim, is surety for the West Line Railroad Company on their bond, to secure which the mortgage foreclosed in this suit was given. But if the sale be set aside by the court for no fault of the complainants, no such consequence could be visited upon them. The purchaser is not lost through their default, nor are they chargeable with the loss. The security required on setting aside the rule will probably, however, obviate any question on this point.